1   DANIEL A. BECK (SBN 204496)
    dbeck@roll.com
2   MICHAEL M. VASSEGHI (SBN 210737)
    mvasseghi@roll.com
3   DANIELLE M. CRIONA (SBN 204074)
    dcriona@roll.com
4   ROLL LAW GROUP PC
    11444 West Olympic Boulevard
5   Los Angeles, California 90064-1557
    Telephone:   (310) 966-8400
6   Facsimile:   (310) 966-8810

7   Attorneys for Plaintiffs
    Paramount Farms International LLC,
8   and Cal Pure Pistachios, Inc.

9

10              **UNITED STATES DISTRICT COURT**

11     **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

12

| | |
|---|---|
| 13  PARAMOUNT FARMS<br>    INTERNATIONAL LLC, a Delaware<br>14  limited liability company, and CAL<br>    PURE PISTACHIOS, INC., a<br>15  California Nonprofit Cooperative<br>    Association,<br>16<br>              Plaintiffs,<br>17<br>    vs.<br>18<br>    LIVING INTENTIONS, LLC, a<br>19  California limited liability company,<br>    and DOES 1 through 10, inclusive,<br>20<br>              Defendant.<br>21<br>22<br>23<br>24<br>25 | Case No.  15-cv-3869<br><br>**COMPLAINT FOR:**<br><br>**FEDERAL TRADEMARK AND<br>TRADE DRESS INFRINGEMENT;**<br><br>**VIOLATION OF THE LANHAM<br>ACT SECTION 43(a);**<br><br>**FEDERAL TRADEMARK<br>DILUTION;**<br><br>**UNFAIR COMPETITION UNDER<br>CALIFORNIA BUSINESS AND<br>PROFESSIONS CODE SECTION<br>17200 ET SEQ.**<br><br>**DEMAND FOR TRIAL BY JURY** |

26

27

28

{2428947.3}

COMPLAINT

Plaintiffs Paramount Farms International LLC and Cal Pure Pistachios, Inc., hereby allege as follows:

## PARTIES

1.      Plaintiff Paramount Farms International LLC and its affiliates grow, package, market and distribute the famous WONDERFUL® brand of pistachio and almond nuts throughout the United States.

2.      Plaintiff Cal Pure Pistachios, Inc. is a California nonprofit cooperative which markets and sells pistachio nuts.

3.      Paramount Farms International LLC, and Cal Pure Pistachios, Inc., are collectively referred to herein as "Paramount."

4.      Defendant Living Intentions, LLC ("Living Intentions") is a California corporation, located at 250 S. Garrard Boulevard, Richmond, CA 94801.

5.      Paramount is not aware of the true names and capacities of the Defendants identified herein as Does 1 through 10, inclusive, and therefore fictitiously names said Defendants.  Paramount will amend this Complaint to allege the true names and capacities of these fictitiously named Defendants when their identities are ascertained.

6.      Paramount is informed and believes, and based thereon alleges, that Defendant Living Intentions and each of the fictitiously named Doe Defendants (collectively, "Defendants") were in some manner responsible for the acts alleged herein and the harm, losses and damages suffered by Paramount as alleged hereinafter.  Paramount is also informed and believes, and based thereon alleges, that while participating in such acts, each Defendant was the agent, principal, and/or alter ego of the other Defendants, and was acting in the course and scope of such agency and/or acted with the permission, consent, authorization or ratification of the other Defendants.

{2428947.3}

**JURISDICTION AND VENUE**

7.      This action arises, in part, under the Lanham Act, as amended; California Business and Professions Code Section 17200 and 17500 et seq.; and California common law.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1331 (federal question), 15 U.S.C. Section 1051, et seq. (trade dress infringement under the Lanham Act), 28 U.S.C. Section 1338 (unfair competition related to trademark claims) and 28 U.S.C. Section 1367 (supplemental jurisdiction).

8.      On information and belief, Living Intentions is engaged in the growing, harvesting, processing, packaging and distribution of the "Gone Nuts!" product sold in California, including in this District.

9.      Paramount is informed and believes, and based thereon alleges, that venue is proper in this District pursuant to 28 U.S.C. Sections 1391(b) and 1391(c) because a substantial part of the events and harm giving rise to the claims occurred in this District.  Additionally, Paramount is informed and believes, and based thereon alleges, that the Court has personal jurisdiction over Defendants because Defendants conduct their ordinary business activities in this District, have focused a substantial portion of their unlawful conduct within this District, have distributed and sold and sought to distribute and sell infringing products in this District, and generally engage in business in this District.

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

**I.      THE WONDERFUL® BLACK TRADE DRESS AND THE WONDERFUL® BRAND OF NUTS**

10.      Paramount is the largest pistachio processor and pistachio seller in the world.  Paramount also processes and sells almonds.  Paramount grows, harvests, processes, packages, ships, markets, sells, and distributes pistachio and almond nuts in the United States in connection with its highly distinctive and famous WONDERFUL® brand.

11.   Paramount has been growing, processing, selling, and marketing WONDERFUL® brand nuts since May 2007.

12.   Paramount has been the key player in creating consumer demand for pistachios in the United States.

13.   The WONDERFUL® brand nuts are of superior quality and are brought to consumers using growing, harvesting, processing, and packaging processes which adhere to the strictest and highest quality standards.  Paramount has invested more than $100 million to ensure that its processing facilities consistently produce the highest quality pistachios and almonds anywhere.

14.   Paramount has invested close to $200 million dollars building the WONDERFUL® brand for its high quality pistachio and almond nut products.

15.   The combination of Paramount's use of uniquely designed packaging, a distinct, predominantly black color scheme, specific fonts and accent colors, make the trade dress created by Paramount inherently distinctive (the "WONDERFUL® Black Trade Dress").  The WONDERFUL® Black Trade Dress functions independently of the WONDERFUL® word trademark as a source identifier.  The elements of the WONDERFUL® Black Trade Dress that make it inherently distinctive include the following:

a.   the predominantly black packaging;

b.   the rectangular shape of the package;

c.   a uniquely shaped transparent portion in the middle of the packaging;

e.   unique accent colors, including shades of bright green, brown, red, orange, and purple used to highlight the content – "pistachios" or "almonds" – and the seasoning of the nuts;

f.   the use of all capital letters for the words "PISTACHIOS" and "ALMONDS"; and

1       g.     the use of *sans serif* font for the words "PISTACHIOS" and

2 "ALMONDS".

3     16.    The above-referenced elements have been continuously used in

4 interstate commerce since the WONDERFUL® brand was launched in 2007.

5 Therefore Paramount has acquired common law rights in the WONDERFUL® Black

6 Trade Dress.

7     17.    Attached as Exhibit A are true and correct copies of photographs of

8 examples of the WONDERFUL® Black Trade Dress as Paramount has used it in

9 commerce in the United States.

10     18.    In the U.S. alone, in addition to Paramount's common law rights to the

11 WONDERFUL® Black Trade Dress, the United States Patent and Trademark Office

12 has issued several registrations for trademarks used in Paramount's trade dress,

13 including  U.S. Registration Nos. 3882294 and 4307923, 4554188, 4623142, and

14 U.S. Application Serial No. 85/766,491, and Paramount has a pending application as

15 well.

16     19.    The WONDERFUL® brand utilizing the WONDERFUL® Black Trade

17 Dress has been extensively marketed in the United States and throughout the world.

18 In September 2009, Paramount embarked on a highly-publicized series of television

19 commercials on major television networks such as NBC, CBS, ABC, FOX, A&E,

20 Biography, Comedy Central, Discovery, Discovery Science, E!, Food Network, FX,

21 HGTV, IFC, National Geographic, SYFY, TBS, TLC, TNT and ESPN for the

22 WONDERFUL® brand of pistachios ("2009 Ad Campaign").  Commercials on these

23 channels were shown during prime time slots during highly popular television

24 shows and featured well-known personalities known to consumers such as Vincent

25 Pastore from The Sopranos, Levi Johnston, Lauren Caitlin Upton aka Miss Teen

26 South Carolina, Jason Acuna aka Wee-Man, and Dara Torres, a 2008 Beijing

27 Olympics silver medalist.

28

20.     In September 2010, Paramount launched its second series of television commercials.  The 2010 Ad Campaign commercials aired on similar networks, at similar time slots and during similar prime time television shows as the 2009 Ad Campaign and featured well-known personalities such as former Illinois governor Rod Blagojevich, television character "Snooki" from the popular reality show Jersey Shore, football star Chad Ocho Cinco and comic Lewis Black. The 2010 Ad Campaign alone resulted in approximately 137 million consumer impressions.

21.     In 2011, Paramount launched a $30 million advertising campaign which included more television commercials.  As in previous years, the 2011 Ad Campaign commercials aired on major networks during prime time television shows and featured well-known personalities such as then Lakers basketball player Lamar Odom and his then-wife Khloe Kardashian, Kermit the Frog, and "Facebook twins" and Olympians Cameron and Tyler Winkelvoss.

22.     In September 2012, Paramount launched its fourth season of television commercials on major networks featuring talent from the world of music, sports, social media and technology.  The $30 million advertising campaign debuted during prime time television on shows such as "Survivor" and "X Factor."

23.     In September 2013, Paramount launched five new television commercials spots that featured such personalities as King Kong, Dennis Rodman, and the Prancercise Lady.  The spots have also been viewed hundreds of thousands of times on YouTube.   For the 2013 Super Bowl, international pop sensation, PSY, starred in Paramount's first ever Super Bowl spot.

24.     For the 2014 Super Bowl, Paramount introduced Comedy Central mainstay Stephen Colbert as the new spokesperson for Paramount's "Get Crackin' America" campaign.  The quirky Colbert is one of the nation's leading political satirists and former host of the Emmy Award-winning comedy show "The Colbert Report" and soon to be host of the "Late Show."  During 2014, Paramount ran ten different commercials starring Stephen Colbert.  The packaging showing

1  Paramount's WONDERFUL® Black Trade Dress is shown in every one of these
2  commercials.  On YouTube alone, the Colbert commercials have already received
3  well over two million views.  Paramount's "Get Crackin' America" campaign
4  continued until the 2015 Super Bowl.

5       25.    Paramount has several commercials airing at this time, including those
6  featuring Manny Pacquiao, and plans to launch a new advertising campaign in the
7  Fall of 2015.

8       26.    Because nuts are considered a "fast moving" consumer good and
9  because of their wide distribution and relatively low cost, consumers are likely to
10  make purchases of pistachio and almond nuts quickly.  It is for this reason that
11  Paramount has spent such a considerable sum of money developing the
12  WONDERFUL® Black Trade Dress and the WONDERFUL® brand.

13      27.    The WONDERFUL® Black Trade Dress is inherently distinctive.  Due
14  to Paramount's exclusive and extensive use of the WONDERFUL® Black Trade
15  Dress, it has acquired considerable value and has become famous to the consuming
16  public as identifying and distinguishing Paramount exclusively and uniquely as the
17  source of products which use the WONDERFUL® Black Trade Dress.  Thus, the
18  WONDERFUL® Black Trade Dress has also acquired secondary meaning, acquired
19  distinctiveness, and has become famous.

20      28.    The WONDERFUL® Black Trade Dress is used uniformly and
21  consistently in the majority of the WONDERFUL® brand products, advertisements,
22  and promotions in commerce in connection with Paramount's almonds and
23  pistachios.

24      29.    Paramount, its authorized distributors, and its distributors' customers,
25  have continuously and exclusively used the WONDERFUL® Black Trade Dress to
26  distinguish themselves as the source of goods and services in connection therewith.

27      30.    Paramount has been careful, skillful, and diligent in conducting its nut
28  business and maintaining uniform standards of high quality in its goods and

1   services.  As a result of these efforts, the WONDERFUL® brand has acquired a

2   public acceptance and reputation, thereby creating a valuable public goodwill that

3   inures to Paramount's benefit.

4        31.     To date, Paramount has expended tens of millions of dollars in the

5   United States alone on the marketing, advertising, sales, and promotion of its

6   WONDERFUL® brand, using its WONDERFUL® Black Trade Dress as the

7   centerpiece for its marketing, and making Paramount one of the leaders in the nut

8   industry.

9        32.     As a result of Paramount's extensive marketing, sales, and promotional

10  efforts, the WONDERFUL® brand is now one of the best-selling nut products in the

11  United States.  Paramount has sold hundreds of millions of pounds of

12  WONDERFUL® pistachios and almonds since the brand launched in the United

13  States in May 2007.

14  **II.     LIVING INTENTIONS INFRINGING PRODUCTS AND ITS INTENT**

15  **       TO COPY PARAMOUNT'S WONDERFUL® BLACK TRADE DRESS**

16       33.     Living Intentions is a California-based seller of packaged nuts,

17  including, pistachios, almonds, walnuts, and cashew nuts.  As such, Living

18  Intentions is a direct competitor of Paramount and is aware of Paramount and its

19  distinctive packaging, trade dress and trademark.

20       34.     Living Intentions had actual notice of Paramount's rights when it

21  received Paramount's December 4, 2014, letter advising it of Paramount's rights.

22       35.     Living Intentions has deliberately infringed on Paramount's

23  WONDERFUL® Black Trade Dress by changing its packaging to a packaging

24  highly similar to the unique and distinctive WONDERFUL® Black Trade Dress.

25       36.     On information and belief, Living Intentions' infringing packaging was

26  introduced in January 2012.  Prior to that time, Living Intentions products were

27  packaged in a clear, see-through bag, affixed with labels utilizing minimal black

28  coloring.

37.     Attached as Exhibit B is a true and correct copy of a photograph of packaging Living Intentions utilized prior to it introducing its infringing packaging.

38.     The new Living Intentions infringing packaging has copied the following features from Paramount's WONDERFUL® Black Trade Dress:

        a.      The Living Intentions infringing packaging is predominantly black, like Paramount's WONDERFUL® Black Trade Dress;

        b.      The Living Intentions infringing packaging is predominantly rectangular in shape, like Paramount's WONDERFUL® Black Trade Dress;

        c.      The Living Intentions infringing packaging contains a transparent portion on the packaging, like Paramount's WONDERFUL® Black Trade Dress;

        d.      The Living Intentions infringing packaging utilizes all capital letters;

        e.      The word "nuts" is written in *sans serif* font, like the words "PISTACHIOS" and "ALMONDS" are on the WONDERFUL® Black Trade Dress; and

        f.      The Living Intentions infringing packaging utilizes unique accent colors, including shades of green, brown, red, orange, and purple like Paramount's WONDERFUL® Black Trade Dress.

39.     Attached as Exhibit C are true and correct copies of photographs of the Living Intentions Black Trade Dress.

40.     Paramount is informed and believes, and based thereon alleges, that Living Intentions uses the inherently unique and distinctive WONDERFUL® Black Trade Dress so as to cause a likelihood of confusion between Living Intentions' product and Paramount's product, or to cause mistake, or to deceive the relevant public that Living Intentions' pistachios are authorized, sponsored or approved by or are affiliated with Paramount and the WONDERFUL® brand.

1    41.    Paramount is further informed and believes, and based thereon alleges,

2  that by willfully misappropriating the distinctive and famous WONDERFUL® Black

3  Trade Dress, Living Intentions is causing customer confusion in the marketplace.

4    42.    On December 19, 2014, Living Intentions' counsel responded to

5  Paramount's December 4, 2014, cease and desist letter.  Mistakenly believing that

6  Living Intentions' infringing packaging predated Paramount's WONDERFUL®

7  Black Trade Dress packaging, and therefore had priority of use, Living Intentions

8  asserted that Paramount had "copied the Gone Nuts Packaging with intent to trade

9  on Living Intentions' reputation…[t]herefore [Paramount's] actions constitute

10  trademark infringement and unfair competition."  In doing so, Living Intentions

11  admits that its packaging and Paramount's trade dress are sufficiently similar so as

12  to constitute confusion and infringement.

13    43.    Attached as Exhibit D is a true and correct copy of Living Intentions'

14  December 19, 2014, letter.

15    44.    Paramount is further informed and believes, and based thereon alleges,

16  that the Living Intentions product is similar to Paramount's nut products (except,

17  perhaps, in quality), and are being sold in the same stores to identical classes of

18  consumers who purchase edible nuts with an identical level of sophistication and

19  impulsivity.

20    45.    Attached as Exhibit E is a true and correct copy of a photograph

21  showing Living Intentions' product and Paramount's product being sold in the same

22  store.

23    46.    Paramount is further informed and believes, and based thereon alleges,

24  the natural, probable and foreseeable result of Living Intentions' intentional, willful

25  and wrongful conduct has been to deprive Paramount of business and goodwill, and

26  to injure Paramount's relationships with existing and prospective customers.

27    47.    Paramount is further informed and believes, and based thereon alleges,

28  that Living Intentions' infringement of the WONDERFUL® Black Trade Dress

1   causes a likelihood of confusion and actual confusion with Paramount's

2   WONDERFUL® brand.

3       48.    Paramount is further informed and believes, and based thereon alleges,

4   that it has lost and will lose revenues as a result of Living Intentions' wrongful

5   conduct in producing, marketing, and selling the infringing Living Intentions

6   product.

7       49.    Paramount is further informed and believes, and based thereon alleges,

8   that Living Intentions has been unjustly enriched by the production, sale, and

9   marketing of the infringing Living Intentions product.

10                    **FIRST CLAIM FOR RELIEF**

11              (Trade Dress Infringement and False Designation of Origin

12                    Pursuant to 15 U.S.C. § 1125(a))

13      50.    Paramount incorporates Paragraphs 1 through 49 above as though set

14   forth fully herein.

15      51.    Paramount has used an inherently distinctive trade dress in interstate

16   and foreign commerce in connection with the sale and marketing of its

17   WONDERFUL® brand pistachios and almonds.  The WONDERFUL® Black Trade

18   Dress contains inherently distinctive, nonfunctional features which are protected

19   under Lanham Act Section 43(a), 15 U.S.C. Section 1125(a).

20      52.    The Living Intentions product's packaging is infringing, and Living

21   Intentions is falsely designating the origin of its products because it uses and

22   infringes on the WONDERFUL® Black Trade Dress for Paramount's pistachios and

23   almonds.

24      53.    Living Intentions' use of the WONDERFUL® Black Trade Dress has

25   confused the public, and is likely to continue to cause confusion or to cause mistake,

26   or to deceive the consuming public into believing that Living Intentions' products

27   are authorized, sponsored or approved by or are affiliated with Paramount.

28

54.     These acts constitute trade dress infringement of the WONDERFUL®
Black Trade Dress, and false designation of origin in violation of 15 U.S.C. Section
1125(a), entitling Paramount to relief.

55.     Paramount is, and will continue to be, irreparably harmed if Living
Intentions is not enjoined.  Paramount's remedy at law is not adequate to
compensate it for the injuries inflicted, and Paramount is therefore entitled to entry
of injunctive relief pursuant to 15 U.S.C. Section 1116.

56.     Living Intentions has caused Paramount to suffer monetary damages in
an amount to be proven at trial.

57.     Paramount is further entitled to recover Living Intentions' profits
attributable to the infringement.

58.     Because of the willful nature of Living Intentions' acts, Paramount is
entitled to treble damages pursuant to 15 U.S.C. Section 1117.

59.     Paramount is entitled to an award of its attorneys' fees pursuant to 15
U.S.C. Section 1117 because this is an exceptional case.

## SECOND CLAIM FOR RELIEF

### (Trade Dress Infringement Pursuant to 15 U.S.C. Section 1114(a))

60.     Paramount incorporates by reference Paragraphs 1 through 59 above as
though fully set forth herein.

61.     Living Intentions' actions, described above, constitute unauthorized use
in commerce of a registered mark in connection with the sale and advertising of
goods, and such use is likely to cause confusion or to cause mistake or to deceive as
to the origin of the goods sold by Living Intentions.

62.     Living Intentions' wrongful actions violate 15 U.S.C. Section 1114(a).

63.     Paramount is, and will continue to be, irreparably harmed if Living
Intentions is not enjoined from its infringing acts.  Paramount's remedy at law is not
adequate to compensate it for the injuries inflicted, and Paramount is therefore
entitled to entry of injunctive relief pursuant to 15 U.S.C. Section 1116.

64.    Living Intentions' actions have caused Paramount to suffer monetary damages in an amount to be proven at trial.

65.    Paramount is further entitled to an award of Living Intentions' profits attributable to the infringement.

66.    Because of the willful nature of Living Intentions' acts, Paramount is entitled to treble damages pursuant to 15 U.S.C. Section 1117.

67.    Paramount is entitled to an award of its attorneys' fees pursuant to 15 U.S.C. Section 1117 because this is an exceptional case.

## THIRD CLAIM FOR RELIEF

### (Federal Trade Dress Dilution)

68.    Paramount incorporates by reference Paragraphs 1 through 67 above as though fully set forth herein.

69.    The WONDERFUL® BlackTrade Dress is inherently distinctive and famous.

70.    Living Intentions' use in commerce of Paramount's inherently distinctive and famous WONDERFUL® Black Trade Dress began after the latter became famous.

71.    Living Intentions' conduct causes and will continue to cause dilution of the distinctive quality of the famous WONDERFUL® Black Trade Dress.

72.    Living Intentions' conduct is the result of willful and wanton disregard of Paramount's superior rights.  Living Intentions adopted, used, and continues to use Paramount's WONDERFUL® Black Trade Dress despite having notice of Paramount's rights.

73.    Paramount is, and will continue to be, irreparably harmed if Living Intentions is not enjoined from its infringing acts.  Paramount's remedy at law is not adequate to compensate it for the injuries inflicted, and Paramount is therefore entitled to entry of injunctive relief pursuant to 15 U.S.C. Section 1125(c).

74.     Living Intentions' actions have caused Paramount to suffer monetary damages in an amount to be proven at trial.

75.     Because of the willful nature of Living Intentions' acts, Paramount is entitled to treble damages pursuant to 15 U.S.C. Section 1117.

76.     Paramount is entitled to an award of its attorneys' fees pursuant to 15 U.S.C. Section 1117 because this is an exceptional case.

## FOURTH CLAIM FOR RELIEF

(Violation of California Unfair Competition Pursuant to Cal. Bus. & Prof. Code Sections 17200 and 17500 et seq.)

77.     Paramount incorporates by reference Paragraphs 1 through 76 above as though fully set forth herein.

78.     Living Intentions sells its Living Intentions product in direct competition with Paramount.

79.     Living Intentions' willful, knowing and unauthorized use of infringing packaging in connection with the Living Intentions product is causing confusion as to the source of the goods and is causing harm to Paramount's goodwill.  Living Intentions' infringing use constitutes an unlawful appropriation of Paramount's exclusive rights in its WONDERFUL® Black Trade Dress.

80.     By selling its goods using infringing promotional material, Living Intentions is in violation of Paramount's proprietary rights, thereby constituting unfair competition as such acts constitute unlawful, unfair, deceptive and/or fraudulent trade practices and unfair competition in violation of California Business & Professions Code Sections 17200 and 17500 et seq.

81.     As a direct and proximate result of Living Intentions' wrongful conduct, Paramount has suffered injury in fact, which includes a loss of sales, damage to Paramount's goodwill with its existing, former and potential customers, and actual confusion between the Living Intentions product and Paramount's products and advertising.

82.   The harm these wrongful acts will cause to Paramount is imminent and irreparable.  As such, Paramount has no adequate remedy at law.

83.   Pursuant to California Business & Professions Code Section 17203, Living Intentions is required to disgorge and restore to Paramount all profits and property acquired by means of Living Intentions' unfair competition with Paramount.

84.   Pursuant to California Business & Professions Code Section 17203, Paramount is entitled to a preliminary and permanent injunction restraining Living Intentions, its respective officers, agents, employees, distributors and all persons acting in concert with them, from engaging in further such unlawful conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.   That the Court enter judgment against each Defendant that:

a.   Defendants infringed Plaintiffs' rights in the WONDERFUL® Black Trade Dress in violation of 15 U.S.C. Sections 1125(a) and 1114;

b.   Defendants diluted the WONDERFUL® Black Trade Dress in violation of 15 U.S.C. Section 1125(c); and

c.   Defendants engaged in unfair competition and deceptive acts and practices in violation of California Business & Professions Code Sections 17200 and 17500 et seq.

2.   That the Court enter judgment against each Defendant that the above acts were willful and intentional making this an exceptional case.

3.   That the Court issue a preliminary and permanent injunction enjoining and restraining Defendants and their agents, servants, employees, successors, assigns and all other persons acting in concert or in conspiracy with or affiliated with any Defendants from:

a.   Engaging in any infringing activity including advertising, promoting, marketing, franchising, distributing, selling, and offering for sale, any

goods or services in connection with the infringing trade dress identified herein or any trade dress confusingly similar to Paramount's WONDERFUL® Black Trade Dress; and

        b.     Requiring Defendants to deliver up to Plaintiffs for destruction any and all packaging, advertising and promotional materials in Defendants' possession, custody or control, which infringe on the WONDERFUL® Black Trade Dress.

4.     That Plaintiffs be awarded damages resulting from Defendants' infringement in accordance with the provisions of 15 U.S.C. Section 1117.

5.     That damages resulting from Defendants' infringement and unfair competition under the Lanham Act be trebled due to Defendants' willfulness, in accordance with the provisions of 15 U.S.C. Section 1117.

6.     That Plaintiffs be awarded all profits and monies resulting from Defendants' infringement of Plaintiffs' rights and by means of Defendants' unfair competition with Plaintiffs.

7.     That Plaintiffs be awarded an amount sufficient to reimburse Plaintiffs for the costs of corrective advertising.

8.     For pre-judgment interest on all infringement and other appropriate damages.

9.     That the Court finds this case to be exceptional and awards Plaintiffs their reasonable attorney fees pursuant to 15 U.S.C. Section 1117 and any other applicable provision of law.

10.    That the Court awards Plaintiffs their costs of suit incurred herein.

/ / /

/ / /

/ / /

/ / /

/ / /

1       11.     For such other or further relief as the Court may deem just and proper.

2

3

4   DATED:  May 21, 2015       ROLL LAW GROUP PC

5

6

7                        By:   */s/ Michael M. Vasseghi*

8                              Michael M. Vasseghi
                             Attorneys for PLAINTIFF

9                              PARAMOUNT FARMS
                             INTERNATIONAL LLC, and

10                            CAL PURE PISTACHIOS, INC.

11

12                       **DEMAND FOR JURY TRIAL**

13

14       Plaintiffs hereby demand a jury trial in connection with this action.

15

16   DATED:  May 21, 2015       ROLL LAW GROUP PC

17

18

19                        By:   */s/ Michael M. Vasseghi*

20                              Michael M. Vasseghi
                             Attorneys for PLAINTIFF

21                              PARAMOUNT FARMS

22                            INTERNATIONAL LLC, and
                           CAL PURE PISTACHIOS, INC.

23

24

25

26

27

28

{2428947.3}

COMPLAINT

# Exhibit A





















# Exhibit B



**Exhibit C**
















# Exhibit D



**VIA E-MAIL AND U.S. MAIL**

December 19, 2014

Danielle M. Criona, Esq.
Senior Counsel
Roll Law Group
11444 West Olympic Boulevard
Los Angeles, California 90064

RE:    <u>Trademark Infringement</u>

Dear Ms. Criona

Our client, Living Intensions, LLC ("Living Intensions") has forwarded to us your letter of December 4, 2014, regarding the claimed unauthorized use of Paramount Farms International LLC's ("Paramount Farms") intellectual property in connection with its WONDERFUL® brand nut products ("WONDERFUL® Packaging"). Going forward, all further communication and correspondence regarding this matter should be directed to my attention.

As you may be aware, one of Living Intensions featured products is its "Gone Nuts" product line ("Gone Nuts Packaging"). Living Intensions Gone Nuts product features close to a dozen different varieties of seasoned raw nuts. Living Intensions owns several variations of its Gone Nuts Packaging, a sample of which is attached for your reference.

The "Gone Nuts" name and packaging is widely recognized nationally to signify the high quality raw ingredients that make up the Gone Nuts brand provided by Living Intensions. The packaging indicates to its customers and the consuming public that all of Living Intensions goods come from a single source. As such, it represents substantial goodwill and value to Living Intensions.

It has come to our attention that your WONDERFUL® Packaging is clearly intended to trade on the substantial goodwill and reputation earned by Living Intensions over the years. The design of your WONDERFUL® Packaging and other circumstances clearly indicate that you copied the Gone Nuts Packaging with intent to trade on Living Intensions' reputation.

The Gone Nuts Packaging was printed in January, 2012 and launched nationally in March 2012 (*see* https://www.youtube.com/watch?v=VpPrfQnUh9k). Apparently, the three Paramount Farms registered Trademarks for trade dress

rights (Design only and Design Plus words, letters and/or numbers) in connection with the WONDERFUL® brand nut products were all filed with the U.S. Patent and Trademark Office <u>after January, 2012</u>. The three filing dates were April 2, 1012, April 4, 2012, and October 29, 2012, respectively. The registration dates are even later (March 26, 2013, June 24, 2014, and October 21, 2014, respectively–see attached). Accordingly, our client believes that they are the first users of the Gone Nuts Packaging in interstate commerce.

Therefore, your actions constitute trademark infringement **and unfair** competition under federal and state laws, including the Federal Lanham Act, 15 U.S.C. § 1051. The remedies for such infringement include the recovery of our client's actual damages, together with your profits, treble damages and attorney's fees. They further include an injunction against further use of the design and the seizure of infringing materials.

Please confirm in writing to the undersigned, within 10 days of your receipt of this letter, that you will immediately cease and desist from further use of the WONDERFUL® Packaging in connection with the WONDERFUL® brand nut products. If we do not hear from you, we will assume that legal action will be necessary in order to protect our rights. Nothing herein shall be, or deemed to be, a waiver of any rights either at law or in equity, all of which are expressly reserved.

Please feel free to contact me at (415) 513-5629 if you have any questions. Thank you.

Sincerely,

Daniel L. Fishkin, Esq.

Cc: Joshua McHugh (via email)

# Exhibit E



Snacks

BEEF

TURKEY

BEEF JERKY